IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ANTHONY WAYNE JOHNSON, | ) | No. C 10-01273 JW (PR) |
| Plaintiff, | ) ) | ORDER OF DISMISSAL |
| vs. | ) ) | |
| MATTHEW CATE, et al., | ) ) | |
| Defendant(s). | ) ) | |

Plaintiff, a prisoner at the Salinas Valley State Prison ("SVSP"), has filed a pro se civil rights complaint under 42 U.S.C. § 1983 against prison officials. Plaintiff's motion to proceed in forma pauperis, (Docket No. 2), will be addressed in a separate order.

**DISCUSSION**

A.   Standard of Review

Federal courts must engage in a preliminary screening of cases in which prisoners seek redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint "is

Order of Dismissal
P:\PRO-SE\SJ.JW\CR.10\Johnson01273_dismissal.wpd

frivolous, malicious, or fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief." Id. § 1915A(b). Pro se pleadings must be liberally construed. Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48 (1988).

B.  Legal Claims

Plaintiff alleges that prison officials are violating his right to equal protection by refusing to provide him with a free education as provided to other similarly situated inmates. (Compl. 3.) Plaintiff claims that they are discriminating against him on the basis of his financial status as an indigent inmate and based on his race as an African American. (Id.) Specifically, plaintiff claims that he is being forced to pay for college textbooks and supplies that are being provided for free to inmates who read below a ninth grade reading level. (Id., Attach. at 1.)

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985) (quoting Plyler v. Doe, 457 U.S. 202, 216 (1982)); Thornton v. City of St. Helens, 425 F.3d 1158, 1168 (9th Cir. 2005) (evidence of different treatment of unlike groups does not support an equal protection claim).

Where prisoners are not involved, the Supreme Court has articulated three distinct standards applicable to equal protection analysis: strict scrutiny, heightened scrutiny and rational basis review. City of Cleburne, 473 U.S. at 440-41. The standard to be invoked depends on the nature of the class involved or the interest affected. The most lenient standard, rational basis review, requires only that a

Order of Dismissal
P:\PRO-SE\SJ.JW\CR.10\Johnson01273_dismissal.wpd            2

rational basis exist for the classifications drawn and that the practice in question be adopted in pursuit of legitimate government purposes. See, e.g., San Antonio Sch. Dist. v. Rodriguez, 411 U.S. 1 (1973) (right to education). At the other extreme, the strict scrutiny standard requires a close connection between the legislation or practice under examination and a compelling state interest. This is the appropriate test when fundamental rights are at stake or a suspect classification is involved. See, e.g., Roe v. Wade, 410 U.S. 113 (1973) (right to choose an abortion); Shapiro v. Thompson, 394 U.S. 618 (1969) (right to travel); Loving v. Virginia, 388 U.S. 1 (1967) (right to marry); see also Palmore v. Sidotti, 466 U.S. 429, 432 (1984) (Equal Protection Clause strives "to do away with all governmentally imposed discrimination based on race").[1] Finally, in between these two positions lies an intermediate standard of review, heightened scrutiny: there must be a substantial relationship to an important, although not compelling, state interest. This standard has been applied to gender-based classifications. See, e.g., Califano v. Goldfarb, 430 U.S. 199 (1977); Craig v. Boren, 429 U.S. 190 (1976).

Strict scrutiny is inappropriate to test the infringement of prisoners' constitutional rights except the right to racial equality. Johnson v. California, 543 U.S. 499, 530-31 (2005) (holding that Turner v. Safley, 482 U.S. 78 (1987), does not apply to racial classifications in prison). In Turner, the Court reiterated the need for judicial deference to the problems of prison administration, holding that when a prison regulation [or practice] impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests. Turner v. Safley, 482 U.S. at 89.[2] The Court set out four factors to be considered:

---

[1] A violation of the Equal Protection Clause based on racial discrimination is never de minimis. Monterey Mechanical Co. v. Wilson, 125 F.3d 702, 712 (9th Cir. 1997).

[2] The legitimate penological interest may not be presumed. "To satisfy Turner, the [defendant] must, at the very least, adduce some penological reason for its policy at the relevant stage of the judicial proceedings. '[C]onsiderations advanced to support a restrictive policy [must] be . . . sufficiently articulated to

Order of Dismissal
P:\PRO-SE\SJ.JW\CR.10\Johnson01273_dismissal.wpd      3

(1)   Whether there is a valid, rational connection between the prison regulation and the legitimate government interest put forward to justify it.  A regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational, and the government objective must be a legitimate and neutral one.

(2)   Whether there are alternative means of exercising the right that remains open.  If so, courts should be particularly conscious of the measure of judicial deference owed to corrections officials.

(3)   What impact the accommodation of the asserted right will have on guards, other inmates and the allocation of prison resources generally.  If the accommodation will have a significant ripple effect the courts should be particularly deferential to the informed discretion of correctional officials.

(4)   If there is an absence of ready alternatives, this is evidence of the reasonableness of a prison regulation.

See id. at 89-91.

The only proper standard for determining the validity of a prison regulation or practice claimed to infringe on an inmate's constitutional rights is to ask whether the regulation or practice is "reasonably related to legitimate penological interests." Id. at 89.  This is true even when the constitutional right claimed to have been infringed is fundamental or a suspect class is involved, and the state under other circumstances would be required to satisfy a more rigorous standard of review. Washington v. Harper, 494 U.S. 210, 223-25 (1990) (standard of review adopted in Turner applies in all circumstances in which needs of prison administration implicate constitutional rights).

According to the second level's decision which was reviewed at the Director's Level, college tuition was waived for inmate/students through Coastline Community College. (Compl., Ex. 1.)  Students were still responsible for paying the cost of their own textbooks and supplies.  (Id.)  Plaintiff was advised of the relevant California Department of Corrections Operations Manual Section 101010.3, which

---

permit . . . meaningful review.'  Thus, at a minimum, the reasons must be urged in the district court."  Armstrong v. Davis, 275 F.3d 849, 874 (9th Cir.  2001) (quoting Walker v Sumner, 917 F2d 382, 386 (9th Cir. 1990)).

Order of Dismissal
P:\PRO-SE\SJ.JW\CR.10\Johnson01273_dismissal.wpd        4

states in part, "'Academic classes shall be offered to inmates from literacy through high school... College classes may be offered based upon available funding.'" (Id.) Plaintiff was informed that funding was not available, and that SVSP was not required to provide free college courses to inmates, indigent or not. (Id.) The decision stated that SVSP was required "to provide programs that are designed to ensure that upon parole inmates are able to achieve a ninth grade reading level." (Id.) The Decision's Level Appeal Decision affirmed the denial, finding that plaintiff had failed to present compelling evidence and convincing argument to warrant modification of the decision. (Id.) The decision noted that the California Department of Corrections and Rehabilitation ("CDCR") did not have the funding to provide plaintiff "moneyies [*sic*] to purchase college text books." (Id.)

First of all, plaintiff's assertion that he is being discriminated against based on his race without any factual support is conclusory. This Court is not persuaded by plaintiff's reasoning that since Caucasian inmates are the overwhelming majority of non-indigent inmates and can quite easily pay for an education that should be provided for free to all inmates, that therefore the regulation is racially biased. When challenging his treatment with regard to other prisoners, courts have held that in order to present an equal protection claim a prisoner must allege that his treatment is invidiously dissimilar to that received by other inmates. More v. Farrier, 984 F.2d 269, 271-72 (8th Cir. 1993) (absent evidence of invidious discrimination, federal courts should defer to judgment of prison officials); Timm v. Gunter, 917 F.2d 1093, 1099 (8th Cir. 1990) (same). Here, plaintiff's allegations are insufficient to show invidious discrimination on the part of prison officials in the racially neutral regulations regarding college education. Plaintiff cannot show that prison officials are responsible for the alleged financial disparity between Caucasians and African Americans in prison.

Absent racial discrimination, consideration of the Turner factors are appropriate in determining whether the prison regulation regarding education is

Order of Dismissal
P:\PRO-SE\SJ.JW\CR.10\Johnson01273_dismissal.wpd          5

valid because it is reasonably related to legitimate penological interests. Turner v. Safley, 482 U.S. at 89.[3] According to the appeal decision discussed above, the CDCR did not have funding to enable plaintiff, or other indigent inmates, to pay for college textbooks. See *supra* at 5. The Court finds this constitutes a "common-sense connection between a legitimate objective and a prison regulation," *i.e.*, the prison regulation limiting the availability of college classes and the requirement that inmates pay for their own textbooks and supplies is rationally related to the legitimate penological interest in managing prison resources. Frost v. Symington, 197 F.3d 348, 357 (9th Cir. 1999). There is little doubt that the impact of covering the cost of textbooks and supplies for all inmates who wished to pursue a college education would strongly impact the allocation of prison resources. Furthermore, the regulation does not prevent plaintiff from obtaining money on his own to cover the cost of textbooks and supplies or prohibit plaintiff from pursuing a college education through other less costly means. Accordingly, plaintiff's claim that SVSP's regulations regarding education violates his right to equal protection is DISMISSED because the regulation is reasonably related to legitimate penological interests. Turner v. Safley, 482 U.S. at 89.

## CONCLUSION

For the foregoing reasons, the complaint is DISMISSED with prejudice.

DATED: July 6, 2010

JAMES WARE
United States District Judge

---

[3] A court need not determine the scope of a prisoner's constitutional rights before applying the Turner test: if a challenged regulation is reasonably related to legitimate penological interests, it must be sustained regardless of whether or to what extent it infringes a constitutional right. Overton v. Bazzetta, 539 U. S. 126, 131-32 (2003) (holding that it need not consider the scope of prisoners' First Amendment right to intimate association because challenged regulation bears a rational relation to legitimate penological interests).

Order of Dismissal
P:\PRO-SE\SJ.JW\CR.10\Johnson01273_dismissal.wpd

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

ANTHONY W JOHNSON JR,

        Plaintiff,

  v.

MATTHEW CATE, et al.,

        Defendants.

                                           /

Case Number: CV10-01273 JW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on   7/6/2010  , I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Anthony Wayne Johnson F-58411
Salinas Valley State Prison
P. O. Box 1030
Soledad, Ca 93960

Dated:   7/6/2010

                                      Richard W. Wieking, Clerk
                                  /s/ By: Elizabeth Garcia, Deputy Clerk